## FOREST COUNTY.

3 P    190
208    633

JANUARY TERM, 1882, No. 409.                DECEMBER 5, 1882.

# Buffalo, Pittsburgh & Western Railroad Company v. O'Hara *et ux.*

1. A common carrier cannot protect himself by special contract from liability for negligence.

2. Against his extraordinary liability as a common carrier he may protect himself by such a contract, but not from his liability as a simple bailee.

3. That a free pass, given by an officer of a railroad company, is illegal under the Constitution, and the act of June 15, 1874, P. L. 289, does not make the person using it a trespasser, or prevent him from recovering for injuries caused by the negligence of the company.

4. He may recover for such injuries notwithstanding a condition in the pass that the person accepting it " assumes all risk of accident to his person or property without claims for damages on this corporation."

5. *Dubitatur* whether a proviso in a pass against accidents can be held applicable at all to cases where the injury has resulted from negligence.

6. The fact that the plaintiff accepted and rode upon a free pass of the description given to employés engaged in and about defendant's railway, and was not such an employé, will not estop her from recovery.

7. If the free pass was unlawful, the conductor should have demanded the regular fare, and his not doing so did not make the plaintiff a trespasser, or destroy her rights as a passenger.

Before SHARSWOOD, C. J.; MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas of *Forest County*.

Case by Hugh O'Hara and Ellen O'Hara, his wife, in right of said wife, against the Buffalo, Pittsburgh and Western Railroad Company, to recover damages for personal injuries suffered by Ellen O'Hara through the alleged negligence of the company defendant.

The following facts appeared at the trial, March 2, 1882, before BROWN, P. J.:

On February 22, 1881, Mrs. Ellen O'Hara went from

her home, in Trunkeyville, to Oil City, on one of the defendant's passenger trains. Her husband, who was a trackman on a section of the road, had obtained for her an employé's pass through the section foreman. The pass was in the following form:

"PITTSBURGH, TITUSVILLE & BUFFALO RAILWAY.
Trip Pass.

Pass Mrs. Hugh O'Hara, on account of ―――― ――――, from Oil City to Trunkeyville, when countersigned by J. F. Hilliard.

Conditioned that the person accepting this free pass assumes all risk of accident to his person or property, without claims for damages on this corporation. Good only for the person named.

T. H. WILSON,
*Superintendent.*"

It was countersigned by T. F. Hilliard.

This pass was honored by the conductor of the train on which she went to Oil City. On the afternoon of the same day, she took the regular passenger train at Oil City to return to Trunkeyville. At President station, thirteen miles above Oil City, the regular train, on which Mrs. O'Hara was riding, was run into by a special train, the engine of which plunged into the rear coach, where Mrs. O'Hara was seated, and by the escaping steam and the shock of the concussion, she, among other passengers, was injured. The evidence showed that the special train had been chartered to take a funeral party from Oil City to Tionesta, and that it left Oil City after the express, or regular train, which was five minutes slow. A rule of the company provided that every following train should keep at least five minutes behind the time of the leading train. A passenger testified that at curves in the river he saw, a number of times, the express train ahead. An engineer of a standing train testified that he threw up his arms to warn the special train to go slow, and that his signal was disregarded.

The plaintiff presented the following points:

1. "If the jury believe from the evidence that the plaintiff, Mrs. O'Hara, was injured while riding as a passenger on defendants' road, by reason of a collision caused by the negligence of the defendant company or its servants, she is entitled to recover damages sufficient to compensate her for the privation and inconvenience she has been subjected to, and for the pain and suffering,

[Buffalo, Pittsburgh & Western Railroad Company *v.* O'Hara *et ux.*]

bodily and mental, she has already experienced, and is likely yet to experience during the remainder of her life." Affirmed.

(First assignment of error.)

2. "The release of damages contained in the pass given in evidence will not relieve the defendant company from liability for damages occasioned by the negligence of the company or its agents." Affirmed.

(Second assignment of error.)

The defendant presented, *inter alia*, the following points:

1. "It being the uncontroverted evidence that Mrs. O'Hara was not an employé of the defendant, and that she was traveling upon defendant's railroad upon a free pass, for which she had given no consideration, such pass having been issued in violation of law, of which the said plaintiff was presumed to have notice, gave her no right to a passage upon the train, and in the eye of the law she was a trespasser thereon, and no recovery can be had in this action." Refused.

(Third assignment of error.)

4. "That if Mrs. O'Hara accepted and rode upon a free pass of the description given to employés engaged on and about defendant's railway, and upon such pass was printed the condition that the person using the same assumed all risk of accident and damage to person or property, the plaintiff cannot recover." Refused.

(Sixth assignment of error.)

The Court charged, *inter alia*, as follows: "The defendant claims that the plaintiff cannot maintain this suit because she was not an employé of the defendant, and was traveling on a free pass, issued in violation of law. . . . We say to you that this is not a defense. Even if we adopt the presumption that Mrs. O'Hara was bound to know the law, she held a free pass signed by the superintendent of the road, countersigned by the foreman of the track section. The conductor of the train, whose peculiar duty is to determine the right of a passenger on his train, recognized her right to a seat under the pass, and having done so, it is not for the defendant to urge that the pass was issued in violation of law. Defendant also claims that as Mrs. O'Hara accepted a pass of the kind given to employés, she occupied the position of an employé so far as the cause of action is concerned, and cannot recover for the injury occasioned by the fault of another employé of the road, in the absence of evidence showing the neglect of the superintending officer

or officers of the defendant. As to this, we say to you that Mrs. O'Hara is not, so far as the evidence shows, in the position of an employé of the defendant, and her right to recover is not to be determined by the same rules as that of an employé. We think, and so instruct you, that Mrs. O'Hara, for anything that appears in the evidence, is to be regarded as a passenger, with the right to recover damages for injuries occasioned by the neglect of the defendant, or its agents or employés, acting within the lines of their general employment, and that, whether the conductor of a special train was or was not managing his train in defiance of the rules of the road, the defendant is liable for the injury resulting from his negligence ; and we further say to you that the conditions on which the pass in this instance was given and accepted do not exempt the defendant from liability for injuries sustained by the plaintiff in consequence of the neglect or carelessness of the conductor of the special train."

March 2, 1882. Verdict for plaintiff for $700, upon which judgment was afterward entered.

The defendants thereupon took this writ, assigning for error the answers to the plaintiff's and defendant's respective points and the portion of the charge quoted above.

*T. F. Richey*, and *Hancock & Glenn*, for plaintiffs in error.

Mrs. O'Hara not being an employé and riding upon a pass illegally issued to her, such pass gave her no right upon the train, and she was in the position of a trespasser thereon and could not recover: Constitution of Pennsylvania, P. L., 1874, 25. Act of 1874, P. L., 289. Green's *Brices Ultra Vires*, 362. Allegheny Valley railroad *v.* McLain, 10 Nor., 442. Duff *v.* Allegheny Valley railroad., *Ibid.*, 458.

The plaintiff traveling as and exercising and claiming the rights of an employé on the train is estopped from afterwards claiming that she was a regular passenger : Dannels *v.* Fitch, 8 Barr, 495. French *v.* Mehan, 6 Smith, 286. Pringle *v.* Pringle, 9 *Ibid.*, 281. Rankin *v.* Simpson, 19 Pa. St. 471. The pass and the conditions together amounted simply to permission on the part of agents without authority to ride on the cars at her own risk.

The New York and New Jersey authorities go much further than we ask here. They decide broadly that a gratuitous passenger can limit his liability to any extent : Perkins *v.* New York Central R. R. Co., 24 N. Y., 196.

[Buffalo, Pittsburgh & Western Railroad Company *v.* O'Hara *et ux.*]

Wells *v.* New York Central R. R. Co., 24 *Ibid.*, 181. Kinney *v.* Central R. R. Co., 3 Vroom, (N. J.,) 407. Same *v.* same, *Ibid.*, 413.

It is true that in Penn'a R. R. Co. *v.* Henderson, 51 Penn. St., 315, this Court seems to hold a contrary opinion, but it will be remembered that in the case last mentioned it was held that the plaintiff below was not a gratuitous passenger, but was compelled to go on the train to take care of his cattle, and paid his own fare as a drover in paying the freight charged for his cattle, and that the case finally turned upon this point, although the Court indicated an opinion that even in the case of a free passenger there could be no limit to the liability of a transportation company.

*B. J. & A. B. Reid* and *E. L. Davis*, for defendants in error.

Mrs. O'Hara was not a trespasser. She bore the written permit of the highest executive officer of the road; and if the conductor, in obedience to the Constitution and statute, had chosen not to recognize it, he could not have ejected her from the train without demanding fare and giving her an opportunity to pay it: Duff *v.* Allegheny Valley R. R. Co., 10 Nor. 461.

The release of damages printed on the pass does not operate to exempt the plaintiff in error from liability. "Common carriers cannot so limit their liability by special notice as to relieve themselves from the consequences of their own or their servants' negligence." American Express Co. *v.* The Second National Bank of Titusville, 19 Smith, 395. Empire Transportation Co. *v.* Wamsutta O. M. Co., 13 *Id.*, 14. Pa. R. R. Co. *v.* Henderson, 1 *Id.*, 325. Pa. R. R. Co. *v.* Butler, 7 *Id.*, 335.

The last two cases show that the rule applies to personal injuries as well as to loss of property: 2 Redfield on Railways, 227.

December 30, 1882.—Per Curiam: A common carrier cannot protect himself by special contract from liability for negligence. Against his extraordinary liability as a common carrier he may protect himself by such a contract, but not from his liability as a simple bailee. Such is the well-settled law of this Commonwealth. It may well be doubted whether the proviso in this pass, being against accidents, can be held applicable at all to cases where the injury has resulted from negligence. If the free pass in this case was unlawful, the conductor should

have demanded the regular fare, and his not doing so did not make O'Hara or his wife trespassers, or destroy their rights as passengers.

Judgment affirmed in each case.